P. R. VAN FRANK, Trustee, etc., Plaintiff, Appellant, v. ST. LOUIS, CAPE GIRARDEAU & FT. SMITH RAILWAY COMPANY et al., Defendants, Appellants; CON. P. CURRAN PRINTING COMPANY, Intervenor, Respondent.

| 89 | 489 |
| 93 | 414 |

St. Louis Court of Appeals, May 7, 1901.

1. **Railroads:** FORECLOSURE SUIT: MORTGAGEE: RECEIVERSHIP: UNSECURED CLAIMS AGAINST RAILROAD. Where the mortgagee of a railroad is the actor in a foreclosure suit, the consideration of the duties and responsibilities assumed by the courts in the grant of receiverships, has been deemed sufficient to authorize them to make provision for liabilities incurred in the preservation

of the property and the performance of the duty of its owner to the public, which in certain contingencies and to a limited extent, authorizes recourse upon mortgaged property or its proceeds, for the payment of unsecured demands against the mortgagor.

2. ———: ———: ———. When the court is thus asked to administer, by the hands of its receiver, property which owes a duty to the public in consideration of corporate franchises, and is also affected by a mortgage lien, the mortgagee necessarily clothes the court with full power to discharge all obligations created, for the protection of the property and arising out of its public uses, during the period of administrative relief, and to that extent, in default of other sources of payment, he empowers the courts to displace his mortgage lien in the payment of such claims.

3. ———: ———: ———: MORTGAGE LIEN, DISPLACEMENT OF: COSTS. And to this category of costs, during the administration of the receiverships with which the courts may displace a mortgage lien against a railroad, belong all costs of receivership and all demands and ,expenses which must be paid in order to preserve the property, subject to the primary charge of the mortgage, and to provide for its uses while in the hands of the court.

4. ———: ———: ———: CLAIM OF INTERVENOR. In the case at bar, the claim of the intervenors is not embraced in this class. It grew out of transactions anterior to the foreclosure proceedings, and was based upon a simple contract between the mortgagor and the business predecessors of the intervenor, for the sale and purchase of printed matter and stationery.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

### STATEMENT OF THE CASE.

The Cape Girardeau Railway Company, although a corporation, has been known by two other slightly variant names, to-wit: Cape Girardeau Southwestern Railway Company, and St. Louis, Cape Girardeau & Ft. Smith Railway Company.

It made two mortgages of its property to Leo Doyle, trustee, of dates September 1, 1880, and January 18, 1881, and known respectively as first and second divisional mortgages. The same corporation by its alias, "Cape Girardeau Southwestern Railway Company" executed two other mortgages on its property to the same trustee, dated May 27, 1882, and December 1, 1885, and termed, respectively, third and fourth divisional mortgages. All of said mortgages were recorded and created liens according to their terms, and were given to secure bonds aggregating six hundred and fifty thousand dollars; all of which bore interest payable semi-annually. Nothing had been paid upon these bonds at the date of the foreclosure suit, subsequently brought for that reason, nor was any part of the interest upon these bonds paid from the income or earnings of the railway company at any time.

On the twenty-sixth of May, 1888, the said railway company, by its said name, Cape Girardeau Southwestern Railway Company, executed a fifth mortgage to the Mercantile Trust Company as trustee, which was termed the consolidated mortgage, and was intended to secure an issue of bonds to be used for taking up those issued under the former mortgages, preserving, however, the liens of the former mortgages for the benefit of the takers of the bonds secured by the consolidated mortgage. The portion of this last issue of bonds not needed for the retiracy of the former issue was to be used for paying the expense of the further construction of the said railway company. The bonds secured by the consolidated mortgage also bore semi-annual interest, no part of which was ever paid from the income or earnings of the said railway company. The total amount of the last issue was eight hundred and eighty-nine thousand dollars; of this five hundred and thirty nine thousand seven hundred dollars were exchanged for divisional bonds, and three hundred and forty-eight thousand, three hundred dollars were

used, partly for construction purposes and partly for the payment of interest on the various bonds of the said railway company.

On the fourth of March, 1893, the railway company filed a petition in the Cape Girardeau Court of Common Pleas for the appointment of a receiver. Upon subsequent proceedings in the Supreme Court, it was held that this petition stated no cause of action; that the court in which it was filed acquired no jurisdiction; that its appointment of Louis Houck as receiver was a nullity, and a peremptory prohibition of further proceedings therein was awarded.

On the twenty-seventh of December, 1893, Leo Doyle, as trustee in the four divisional mortgages, filed a petition for the foreclosure of such conveyances in the circuit court of Cape Girardeau county, which court by a provisional order, after wards made permanent, appointed Louis Houck receiver of the road. At this stage of the proceeding, the Mercantile Trust Company was not before the court. The order of appointment of such receiver, contained among others the following clause:

"Sixth. It is further ordered and this order of appointment of a receiver is made upon this further condition; that all the debts due from the railroad company, for wages and other operative expenses, and for preservation and protection of the property and the interests of the St. Louis, Cape Girardeau & Ft. Smith Railway Company, which have accrued within one year prior to March 3, 1893, together with all debts and liabilities, which said receiver may incur, in operating said road, or which he has incurred in operating said road, under the orders of the Cape Girardeau Court of Common Pleas, shall constitute a lien on said railroad and on all property appurtenant thereto, superior and paramount to the lien of any mortgage set out in the petition, and said railroad shall not be released or discharged from said lien until said debts and liabilities are paid

and the receiver is authorized to pay said debts out of the earnings or any other funds applicable, or if not so paid, then the same shall be paid out of the proceeds of sale of the road after the payment of costs and expenses of this proceeding."

The Mercantile Trust Company afterwards became a party defendant to this foreclosure suit, "but never expressly consented to the terms of the order of the appointment of a receiver." Such foreclosure proceedings resulted in a final decree on the seventh day of January, 1899, whereunder all the property of the railway company was sold on the second day of May, 1899, and purchased on behalf of the holders of the bonds secured in the consolidated mortgage to the Mercantile Trust Company. Such purchase, in conformity with a scheme which was authorized by the terms of the said consolidated mortgage for the reorganization of the railway company, was made in the name of Albert S. Bard, as trustee, for the sum of four hundred and twenty-five dollars, who immediately conveyed the property to a new corporation (Southern Missouri & Arkansas Railroad Company), formed under the laws of this State, by the bondholders under the consolidated mortgage. The proceeds of such foreclosure sale, to the extent necessary to pay obligations superior to the liens of the five mortgages hereinbefore mentioned, have been furnished by the bondholders under the consolidated mortgage. No net earnings accrued to the road during the receivership, which created obligations exceeding forty-five thousand dollars, wholly unpaid at its termination.

At the January term, 1896, the circuit court of Cape Girardeau county required all parties having claims against said railway company to file the same for proof and adjustment, on or before the fifteenth day of January, next. Whereupon, the Con. P. Curran Printing Company filed a petition in said court on the thirteenth day of June, claiming seven hundred and thirty dollars for stationery and printed matter, alleged to have

been made up of a balance of account due January 1, 1893, and other items furnished said railway company between that date and March 2, 1893, as a preferential allowance against the assets in the hands of the receiver of said railway company.

This petition was answered by Leo Doyle, trustee, and the Mercantile Trust Company, trustee, first, by a general denial; secondly, by a denial of all right on the part of the intervenor to a preferential payment of its account out of the assets covered by the foreclosed mortgages.

The issues arising for decision out of this intervention were referred to J. W. Limbaugh, who made a report, submitting therewith the evidence adduced before him, allowing the inter- venor the sum claimed, and finding that the articles furnished to the said company were necessary to its operation and main- tenance and to keep it a going concern and for the preservation of its property, and recommending that the sum so allowed therefor should be decreed to be a lien superior and prior to the liens and rights of the mortgagors and bondholders of said road, but subject to the lien of claims for labor against the said rail- way. To this report a number of exceptions were filed by the trustees, Leo Doyle, and the Mercantile Trust Company, all of which the court overruled, and rendered judgment in favor of said intervenor for the amount of its claim with interest from the thirteenth of June, 1896, aggregating eight hundred and thirty-nine dollars and fifty cents, and charging the same as a lien on the property of said railway company, prior and para- mount to the lien of all the mortgages. After the overruling of their motions for new trial the two trustees appealed to this court.

*R. E. Rombauer* for appellants.

(1) Initial orders establishing preferences, as conditions

in the appointment of a receiver, where the receiver has not acted upon them, are subject to review on final hearing even though made with the express consent of parties before the court. Railroad v. Wilson, 138 U. S. 501; Kneeland v. Loan Co., 136 U. S. 89. As against parties who are not before the court when the order was made, such initial orders have no binding force whatever, and they may challenge their validity even though the receiver has acted upon them. Loan & Trust Co. v. Railroad, 96 Fed. Rep. 636. (2) Paragraph six of the initial order is wholly unwarranted in so far as it gives preference to labor and supply claimants over the mortgage liens represented by Doyle, trustee, and the Mercantile Trust Company, and in so far as it makes such claims payable out of the proceeds of sale, regardless of the fact whether there were any net earnings of the railway company, applicable to the claim during the period of preference or during the receivership. Kneeland v. Loan Co., 136 U. S. 89; Trust Co. v. Brick and Contracting Co., 95 Fed. Rep. 850; Coal Co. v. Railroad, 170 U. S. 365. (3) The intervenor's petition does not state any cause of action for equitable preference, and for a lien under the statute of the State, and its account is no such account as the law requires. Greeley v. Railroad, 123 Mo. 164; O'Connor v. Railroad, 111 Mo. 193; Hughes v. Menefee, 29 Mo. App. 203; Lumber Co. v. Christophel, 59 Mo. App. 85; McWilliams v. Allen, 45 Mo. 573; Graves v. Pierce, 53 Mo. 433; Brown v. Railroad, 36 Mo. App. 458; Allen v. Frument M. & S. Co., 73 Mo. 688.

*R. G. Ranney* for respondent.

(1) Exceptions to the order of the court made on the twenty-seventh of February, 1894, giving preference to the class of claims therein named, should have been made and saved by bill at the same term; and it is now too late to object to said

order.   Waldo v. Russell, 5 Mo. 387; Randolph v. Alsey, 8 Mo. 656; Hoyt v. Williams, 41 Mo. 270; Case v. Fogg, 46 Mo. 44. (2) The order of February 27, 1894, appointing the receiver and establishing the preferences, was assented to by the appellants, through their trustee, Leo Doyle and Mercantile Trust Company, the former in his petition asking for the appointment of a receiver and foreclosure of his mortgages, and the latter by its cross-bill asking for the same relief subsequent to the making of said order and without objection at the time. They, therefore, can not now be heard to object to it.  Garesche v. St. Vincent College, 76 Mo. 332.   (3) If parties litigant fail to object to the orders and rulings of the court at the time they are made, they will be deemed to have consented thereto. Harrison v. Bartlett, 51 Mo. 170; Davis v. Brown, 67 Mo. 313; Griffith v. Hanks, 91 Mo. 116; Ritziner v. Hart, 43 Mo. App. 183.   (4) There is no fixed rule barring preferential debts contracted more than six months before the appointment of the receiver.   The time depends upon the circumstances of each particular case.   There is no "six months rule."   In the case of Hale v. Frost, 99 U. S. 389, the court gave priority to a claim for materials furnished three years before the appointment of a receiver, and for which a note had been given sixteen months before the receiver was appointed.   Also see Burnham v. Bowen, 111 U. S. 776; 4 Sup Ct. Rep. 675; Blair v. Railway, 22 Fed. Rep. 471; Trust Co. v. Railroad, 41 Fed. Rep. 551; Schradski v. Albright, 93 Mo. 42; Beach on Receivers, sec. 369.

BOND, J.—This appeal presents one question which is, can the paramountcy of the claim of the intervenor, as a lien upon the proceeds of the mortgaged property, be sustained under the record before us ?   Waiving for the moment any discussion of the sufficiency of the proof to show title in the intervenor to the account, the question as to the prior equity of the

claim demands decision. If such rights exists at all, it must arise upon the transaction out of which the indebtedness sprang, as well as the orders made and the proof taken in the foreclosure proceedings. To a certain extent, a distinction exists between the incidents of a foreclosure of ordinary mortgages and those embracing property held for public uses, such as that of corporations engaged in the calling of common carriers. With respect to the latter, the doctrine has now taken root that a foreclosure may be had under certain conditions at the instance of the mortgagor as well as the mortgagee. Where the mortgagee of a railroad is the actor in a foreclosure suit, the consideration of the duties and responsibilities assumed by the courts in the grant of receiverships, has been deemed sufficient to authorize them to make provision for liabilities incurred in the preservation of the property and the performance of the duty of its owner to the public, which in certain contingencies and to a limited extent, authorizes recourse upon the mortgaged property, or its proceeds, for the payment of unsecured demands against the mortgagor. When the court is thus asked to administer, by the hands of its receiver, property which owes a duty to the public in consideration of corporate franchises, and is also affected with a mortgage lien, the mortgagee necessarily clothes the court with full power to discharge all obligations created, for the protection of the property and arising out of its public uses, during the period of administrative relief, and to that extent, in default of other sources of payment, he empowers the courts to displace his mortgage lien in the payment of such claims. To this category belong all costs of receivership and all demands and expenses which must be paid in order to preserve the property, subject to the primary charge of the mortgage, and to provide for its uses by the public while

Vol 89 app—32

it is in the hands of the court.    The claim of the intervenor is
not embraced in this class.    It grew out of transactions anterior
to the foreclosure proceedings, and was based upon a simple
contract between the mortgagor and the business predecessors
of the intervenor, for the sale and purchase of printed matter
and stationery.    Under the most liberal view expressed by the
courts, it could only be accorded an equitable preference upon
the surplus income of the railroad for a reasonable time before
the appointment of the receiver, and also during the receiver-
ship, provided it was the expectation of the seller that he would
be paid from such sources, and provided further, the articles
sold entered into the property of the railroad as permanent bet-
terments, or were used in the necessary and proper conduct of
its business as a common carrier.    As surplus incomes are
available in equity for claims possessing these characteristics,
it follows that any diversion of such surplus income to the use
of the mortgage creditors (payment of interest on the secured
debt), or to the permanent improvement of the mortgaged prop-
erty, would entitle the holder of such claim to saddle the mort-
gaged property or its proceeds with a trust to the extent of this
abstraction of the surplus incomes.    These principles are dic-
tated by the peculiar incidents attending the foreclosure of rail-
road mortgages..    Their just application secures the relative
rights of the bondholders and the unsecured creditors.    The
one is accorded the full preservation of the rights vested in the
contract; the other is permitted to assert, against the fund (sur-
plus income) to which he gave credit or against the property
which has appropriated such fund, that equity which even-
handed justice created when he sold to the mortgagor, while in
possession of the railroad and in receipt of its incomes, upon
the faith of that source of revenue, something necessary to the
proper use of the mortgaged property.    When the precise
grounds of this preferential right are accurately comprehended,

it will be seen to be a doctrine resting upon a substratum of sound reason and enlightened equity. On the other hand, if misconceived or misapplied, it becomes fraught with mischief, and destructive to the sanctity of contracts, if not leading to simple confiscation of private property. Any misapprehension of its true boundary has been removed by the clear and explicit announcements in the latest rulings of the Supreme Court of the United States, and in the Federal Courts of Appeal. B. & A. Coal Co. v. Central Ry. Co., 170 U. S. Rep. 355; Kneeland v. American Loan Co., 136 U. S. 89; Fosdick v. Shaw, 99 U. S. 239; International Trust Co. v. Townsend, 95 Fed. Rep. 850.

The record before us is barren of any evidence that the claim of the intervenor possessed the essential elements of a demand which would be entitled to a preferential lien upon the surplus income of the railroad company, either before or after the appointment of a receiver, under the foreclosure proceedings herein. The evidence adduced in support of said claim was submitted to the referee, by him reported to the court, and is before us, and we have been unable therefrom to find any support for his finding, besides it is shown in the record that the railroad company had no surplus earnings; that the mere costs of the receivership entailed upon it a still further debt of forty-five thousand dollars. Since there is no evidence in the record upon which to predicate a diversion of any fund answerable to unsecured creditors and since all the evidence is before us, we are constrained to hold that the learned chancellor erred in confirming the report of the referee, whereby the claim of the intervenor was ordered to be paid out of the proceeds of the sale of the mortgaged property. Under the authorities cited, there was no liability on the part of the bondholders under the various mortgages for the payment of this claim, and the initial order conditioning the appointment of the receiver upon the

payment of claims like that of the intervenor, was erroneously made and subject to attack by appellant in this case, because the final decree entered herein fully reserved that right.

It is accordingly ordered that the judgment of the lower court, confirming the report of the referee making the demand of the intervenor a preferred one, payable out of the proceeds of the foreclosure sale, be reversed.   All concur.